# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

KAREN M.[1],

                                      Plaintiff,

      v.                                    3:17-CV-893 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
BENIL ABRAHAM, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed[2] applications for Disability Insurance Benefits ("DIB")

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

and Supplemental Security Income ("SSI") on October 6, 2013, alleging disability beginning June 16, 2013. (Administrative Transcript ("T") at 13, 237-48). Her applications were denied initially on December 31, 2013. (T. 88-117). Administrative Law Judge ("ALJ") John P. Ramos conducted a hearing on September 22, 2015, at which plaintiff testified. (T. 48-87). The ALJ conducted a supplemental hearing on February 9, 2016, to hear the testimony of Vocational Expert ("VE") Christine Ditrinco. (T. 29-47).

In a decision dated March 9, 2016, the ALJ found that plaintiff was not disabled. (T. 10-28). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 12, 2017. (T. 1-4).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.   Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. __FACTS__

As of the date of the September 22, 2015 administrative hearing, plaintiff was 33 years old. (T. 53). She completed the eleventh grade in regular high school classes, and

subsequently obtained her GED. (T. 434). She also completed college courses to obtain a certificate in phlebotomy. (*Id.*) She resided with her husband and two children, who were ages thirteen and nine. (T. 66).

Plaintiff had worked at several facilities as a phlebotomist. (T. 74-75, 327-36). Her most recent employment was as a substitute teacher's aide at an elementary school. (T. 434). She left this position at the end of the 2012-2013 school year due to her physical impairments. (T. 75-76).

Plaintiff was diagnosed with human immunodeficiency virus ("HIV") in 2008. (T. 286). Plaintiff testified that she suffered fatigue, frequent respiratory infections and had developed shingles three times since her diagnosis. (T. 79). She had been treated with several different retroviral medications, but experienced significant side effects including nausea and night terrors, and discontinued those medications in 2012. (T. 59-60, 65). She testified that her treating physicians recommended that she be tested to determine if other medication would be effective, but that she had not yet done so, in part because it was a "constant reminder that I have this horrible virus." (T. 60-61, 65, 78). Despite the lack of treatment, plaintiff's symptoms had been generally stable, and she had not experienced any opportunistic infections. (T. 371).

In August 2011, plaintiff began suffering from back pain that was exacerbated with movement. (T. 451-52). By 2013, the pain had spread to both hips and her shoulders, and was aggravated by sitting for prolonged periods. (T. 377, 391). Plaintiff reported receiving minimal relief from cortisone injections, pain medication, and physical therapy, leading her physicians to conclude in May 2015 that her "overall

symptomatology is more closely reminiscent of fibromyalgia syndrome which seems to be evolving." (T. 587).

Plaintiff also reported feelings of anxiety and depression, that were aggravated by the stress of seeking relief from her physical impairments. (T. 72, 80). She had been prescribed psychiatric medication by her treating physician, and saw a psychiatrist for an initial evaluation in December 2015. (T. 652-660).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 16-20). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   <u>THE ALJ'S DECISION</u>

After finding that plaintiff met the insured status requirements through December 31, 2017, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 16, 2013. (T. 15). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: human immunodeficiency virus ("HIV"), fibromyalgia, depressive disorder, and anxiety disorder. (T. 15-16). At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 16-17).

The ALJ found at step four of the analysis that plaintiff could perform less than the full range of light work. (T. 17-20). Specifically, he found that plaintiff could walk up to six hours in an eight hour workday, at up to two hour intervals; could sit for up to

two hours in an eight hour workday, at up to one hour intervals; and could stand for up to two hours in an eight hour workday, at up to one hour intervals. (T. 17). He also found that plaintiff could occasionally reach in all directions with both upper extremities; and could frequently handle, finger, push or pull with either upper extremity or hand. (*Id.*) Plaintiff should not climb ladders or scaffolds. She could occasionally climb stairs and ramps, balance at heights, stoop, kneel, crouch, and crawl; and could occasionally work at unprotected heights, work with moving mechanical parts, be exposed to humidity, wetness, extreme temperatures, and vibrations, but she should be limited to a noise environment no greater than moderate. (*Id.*)

The ALJ found that plaintiff retained the ability to understand and follow simple instructions and directions; could perform simple tasks with supervision and independently; could maintain attention and concentration for simple tasks; and could regularly attend to a routine and maintain a schedule. (*Id.*) The ALJ also found that plaintiff could relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction, joint efforts to achieve work goals, or interaction with the public. (*Id.*) The ALJ found that plaintiff could handle reasonable levels of simple work-related stress; plaintiff could make simple decisions directly related to completion of her tasks, where she was not responsible for the work of others, and had little change in daily routine or work duties. (*Id.*)

In making this RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could reasonably be

accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Rulings ("SSR") 96-4p and 96-7p. (T. 18). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 as well as SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible in light of the record evidence. (T. 18-19). The ALJ next found that plaintiff did not retain the capacity to perform any of her past relevant work. (T. 21). Relying on the VE testimony, the ALJ determined that "[c]onsidering the [plaintiffs'] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 21-22). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date of June 16, 2013 through the date of the ALJ's decision. (T. 22).

V.   **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1.   The ALJ's step two determination was not supported by substantial evidence. (Pl.'s Br. at 13-14) (Dkt. No. 9).

2.   The ALJ erred by not discussing whether plaintiff's fibromyalgia met or equaled the severity of any of the Listings. (Pl.'s Br. at 15-16).

3.   The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other

evidence. (Pl.'s Br. at 16-25).

4.    The ALJ erred in evaluating plaintiff's credibility. (Pl.'s Br. at 16-21).

5.    The ALJ erred in his step five determination. (Pl.'s Br. at 26).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-18 ) (Dkt. No. 10).   For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.    SEVERE IMPAIRMENT

### A.    Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011).  A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work will not be considered severe. *Id.* The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the

remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## B.    Application

Plaintiff argues that the ALJ erred by failing to consider whether plaintiff's documented gastrointestinal impairment and urinary incontinence was a severe impairment at step two. As a threshold matter, plaintiff did not identify either of these impairments as a disabling condition during the administrative review process. On her November 6, 2013 applications for benefits, plaintiff alleged that her HIV positive status, sacroiliac joint dysfunction, and depression limited her ability to work. (T. 277). In a January 7, 2014 update regarding her condition, plaintiff only discussed her HIV positive status, hip pain, and an increase in her stress and depression symptoms. (T. 298). At her hearing, plaintiff did not mention any issues with frequent urination, or a frequent need to use the restroom. She testified that her HIV medication had caused side effects including nausea, vomiting, and diarrhea, but further testified that she no

11

longer took that medication. (T. 60).

While incontinence and diarrhea are referenced in plaintiff's treatment notes, the references are limited. Between March and May 2013, plaintiff reported "spontaneous episodes of urinary incontinence" that occurred "from time to time." (T. 354, 374). During that period, plaintiff reported that she was drinking approximately ten cups of coffee per day. (T. 381, 383). A renal ultrasound conducted on May 29, 2013 did not show any abnormalities. (T. 407). Plaintiff complained of "frequent, almost daily" diarrhea in February 2015, but had normal bowel sounds during the examination, with no masses or tenderness in the abdomen. (T. 574). There are no other complaints of urinary incontinence, diarrhea, or other gastrointestinal distress in plaintiff's treatment record, and Dr. Kiran Talati, plaintiff's treating physician, does not mention either condition in his August 31, 2015 opinion. (T. 596-605).

In light of the limited references in the record, plaintiff has not demonstrated that her gastrointestinal and genitourinary impairments caused more than a minimal impact on her ability to perform basic work activities. Accordingly, this court finds that the ALJ's failure to reference plaintiff's gastrointestinal and genitourinary impairments at step two does not provide a basis for remand.[3] In addition, because the ALJ concluded that plaintiff had established other severe impairments at step two, and continued with the sequential analysis, any errors in his step two findings were harmless.

---

[3] Likewise, the ALJ's exclusion from the RFC of any functional limitations related to gastrointestinal or genitourinary impairments is supported by substantial evidence, in light of the lack of any medical opinion or other evidence suggesting such limitations.

# VII. LISTED IMPAIRMENT

## A. Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet *all* of the specific medical criteria of particular listed impairments. *Pratt v. Astrue,* 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

## B. Application

At step three in this case, the ALJ found that plaintiff's HIV and mental impairments, or a combination of plaintiff's impairments, did not meet or medically equal the severity of any listed impairments. (T. 16-17). Plaintiff contends that the ALJ's failure to also discuss plaintiff's fibromyalgia as part of this analysis is an error requiring remand. This court disagrees.

Plaintiff has not offered any record evidence to show that her fibromyalgia potentially met or equally any of the Listings. The only physician to address the Listing criteria, non-examining consultant Dr. Keith Holan, opined that plaintiff's fibromyalgia did not equal a listed impairment, because there was no documentation of inflammatory

arthritis.[4] (T. 632).  Therefore, to the extent that the ALJ erred by failing to specifically address plaintiff's fibromyalgia and Dr. Holan's opinion at step three, such error was harmless.

## VIII.  RFC EVALUATION/TREATING PHYSICIAN/CREDIBILITY

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must

---

[4] Pursuant to SSR 12-2p, fibromyalgia ("FM") "cannot meet a listing in appendix 1 because [it] is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."  SSR 12-2P; Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *10 (July 25, 2012).

specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of

credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

## B. Application

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that he deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence, as summarized below.

### 1. Physical Limitations

As noted above, the ALJ found that plaintiff could perform less than the full range of light work. (T. 17). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's physical impairments, particularly the evidence

related to plaintiff's pain. (Pl.'s Br. at 16-21). This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

In reaching the physical RFC determination, the ALJ gave "significant weight" to the opinion of Dr. Keith Holan, a non-examining consultant who reviewed plaintiff's then-current medical records and responded to the ALJ's interrogatory in November 2015. (T. 19-20, 631-33). Dr. Holan opined that plaintiff's medical records established HIV infection, fibromyalgia, depressive disorder, and anxiety disorder. (T. 631). He further opined that plaintiff could occasionally lift or carry up to twenty pounds, and frequently lift or carry up to ten pounds. (T. 634). Dr. Holan also opined that plaintiff could sit for a total of two hours, stand for a total of two hours, and walk up to a total of six hours over the course of an eight hour work day. (T. 635). In his opinion, plaintiff was limited to occasional reaching bilaterally, but could frequently handle, finger, feel, push, and pull with both hands. (T. 636). He also opined that plaintiff could never climb ladders or scaffolds, but could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, crawl, and operate a motor vehicle. (T. 637-38). He further opined that plaintiff could tolerate frequent exposure to dust, odors, fumes, and pulmonary irritants, but should be limited to occasional exposure to unprotected heights, moving mechanical parts, humidity and wetness, extreme temperature, and vibrations. (T. 638).

Plaintiff contends that the ALJ assigned excessive weight to Dr. Holan's opinion, even though the consulting physician did not examine plaintiff. However, Dr. Holan

reviewed all available records prior to offering his opinion (T. 631), and the ALJ is entitled to rely on his opinion if it is consistent with the record evidence. *See Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); *see also Lugo v. Comm'r of Soc. Sec.*, No. 3:16-CV-746 (GTS), 2017 WL 4005621, at *9 (N.D.N.Y. Sept. 11, 2017) (collecting cases).

The ALJ noted that Dr. Holan had extensive program and professional expertise, and his opinion was "generally consistent with the sum of the objective findings of record." (T. 20). For example, plaintiff regularly demonstrated a normal gait during examinations, and a normal range of motion throughout her musculoskeletal system. (T. 358, 361, 370, 372, 374, 383, 385, 395). Physician evaluations of multiple imaging reports of plaintiff's back and hips did not show any significant abnormalities. (T. 386, 398, 404, 409-410).

Plaintiff contends that the ALJ erred by failing to give controlling weight to the October 1, 2015 treating physician opinion from Dr. Kiran Talati. (T. 20, 598-606). Dr. Talati opined that plaintiff was able to occasionally lift twenty pounds and frequently lift fifteen pounds, but could only stand and walk for sixty minutes without interruption, and only sit for ten to fifteen minutes without interruption. (T. 602-603). In his opinion, plaintiff should never climb, stoop, kneel, or crawl, and could only occasionally balance. (T. 603). He also opined that plaintiff had greater difficulty with uneven surfaces, and would not be able to walk more than a block on uneven or rough terrain. (*Id.*) The ALJ assigned these findings "lesser weight," due to a lack of clinical

evidence. (T. 20). He also assigned "no weight" to Dr. Talati's conclusion that plaintiff would have difficulty engaging in substantial gainful activity, because that finding is reserved for the Commissioner. (*Id*.)

The ALJ emphasized the lack of supporting evidence for Dr. Talati's opinion. The opinion itself is a check-box form that provides little supporting narrative. *See Mix v. Astrue*, No. 09-CV-16, 2010 WL 2545775, at *5 (W.D.N.Y. June 8, 2010) ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). In addition, Dr. Talati's treatment notes do not suggest such extreme limitations with regard to walking, standing, and sitting. For example, plaintiff showed no problems with her gait and station, and Dr. Talati frequently described her joints, bones, and muscles as normal on evaluation. (T. 511, 520). She also showed minimal restrictions in her musculoskeletal range of motion. (T. 535). These findings are consistent with other treating sources. (T. 388, 555).

Although an examining source, such as Dr. Talati, is generally afforded more weight, an ALJ is allowed to afford more weight to a non-examining source, such as Dr. Holan, when the determination is supported by the record. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (noting that the applicable regulations "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record"); *Florez v. Apfel*, No. CV-97-3052, 1998 WL 760334, at *6-7 (E.D.N.Y. Aug. 31, 1998) ("Given the [medical expert's] opinions are supported by the record, and the [treating physician's] opinion that the claimant was disabled is not, the ALJ was free to find the non-examining expert's testimony

20

persuasive."). The ALJ's recitation of the medical evidence adequately demonstrated the reasons for his assignment of greater weight to Dr. Holan's opinion. (T. 17-20). The ALJ also considered plaintiff's daily activities, as summarized below. (T. 19). By explaining his conclusions regarding plaintiff's physical capabilities, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta*, 508 F. App'x. at 56. Accordingly, the ALJ's physical RFC determination was supported by substantial evidence.

## 2. Mental Limitations

Plaintiff also contends that the ALJ erred in his evaluation of plaintiff's mental impairments, particularly her ability to remain on task due to anxiety and depression. (Pl.'s Br. at 25-26). This court finds that the ALJ's consideration of the impact of plaintiff's anxiety and depression on her RFC was supported by substantial evidence.

In determining plaintiff's mental RFC, the ALJ assigned "significant weight" to the December 16, 2013 opinion of Dr. Cheryl Loomis, who performed a psychiatric consultative examination of plaintiff. (T. 20, 434-37). Dr. Loomis opined that plaintiff had no impairment in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, learn new tasks, perform complex tasks independently or under supervision, and make appropriate decisions. (T. 436). Dr. Loomis opined that plaintiff had moderate impairment in her ability to maintain a regular schedule, relate adequately with others, and appropriately deal with stress. (*Id*.) She found that plaintiff's examination results were consistent with psychiatric problems, but on their own, did not appear to be

significant enough to interfere with daily function. (*Id.*)

The ALJ noted that Dr. Loomis's opinion was "rendered after a thorough examination of [plaintiff] by a physician with extensive program and professional expertise." (T. 20). During the examination, plaintiff exhibited adequate social skills and made appropriate eye contact. (T. 435). Although plaintiff exhibited symptoms of depression, Dr. Loomis described plaintiff's thought processes as coherent and goal directed, and observed that her attention and concentration and memory skills were intact. (*Id.*) Plaintiff was able to complete simple calculations, and recite a series of words and numbers with minimal difficulty. (T. 435-36). Dr. Loomis opined that plaintiff had average intellectual functioning, and good insight and judgment. (*Id.*)

The ALJ also assigned "some weight" to Dr. Talati's opinion that plaintiff was "seriously limited" in her ability to behave in an emotionally stable manner, but had otherwise "fair" to "good" mental abilities in areas such as understanding, remembering and carrying out job instructions, relating predictably in social situations, following work rules, and relating to co-workers. (T. 598-600). The ALJ discounted this opinion because Dr. Talati did not have any psychiatric specialization, despite the treating physician's familiarity with plaintiff's progress. (T. 20).

The ALJ gave "limited weight" to the January 28, 2016 psychiatric opinion of Dr. Tara Nelsare. (T. 20). Dr. Nelsare opined that plaintiff's abilities to relate to co-workers and deal with the public were "poor or none," as were her abilities to behave in an emotionally stable manner and relate predictably in social situations. (T. 661, 663). She also opined that plaintiff had serious limitations in her use of judgment, her ability

to deal with work stress, and her ability to interact with supervisors. (T. 661-662). The ALJ discounted Dr. Nelsare's opinion because it was based only on one intake visit, and there was no evidence of a "continuum of treatment." (T. 20). These were valid grounds for discounting her opinion. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. March 8, 2011) (ALJ did not err in discounting physicians' opinions due to their "limited and remote contact" with plaintiff). Although the ALJ discounted this opinion, it appears that he incorporated some of it into the ultimate RFC determination, by limiting plaintiff's interaction with co-workers and the public. (T. 17).

Because the ALJ considered the objective medical evidence, the various medical opinions, plaintiff's daily activities and the hearing testimony in determining plaintiff's mental RFC, his determination was supported by substantial evidence.

### 3. Credibility

Plaintiff testified that she could only stand for approximately ten minutes before having to stand down, could only walk for approximately half a block before losing her balance, and required a cane several days a week, depending on the severity of her symptoms. (T. 68-69). She also testified that she could only sit for approximately fifteen to twenty minutes before changing positions. (T. 71-72). She also estimated that that she was unable to leave her bed at all at least twice a week, due a combination of her pain, fatigue, anxiety, and depression. (T. 71).

When a plaintiff alleges pain that exceeds the objectively verifiable evidence, the ALJ must consider several evaluative factors, including daily activities, medication, and causes of the pain, in order to determine the extent to which the pain affects the

claimant's functional capabilities. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(iv); 416.929(c)(3)(i)-(iv); *see also Brown v. Comm'r of Soc. Sec.*, 3:16-CV-941 (WBC) 2017 WL 3034311, at *8 (N.D.N.Y. July 17, 2017) (remanding where ALJ failed to consider plaintiff's daily activities and treatment for fibromyalgia in formulating RFC). The ALJ did so in this case.

For example, the ALJ noted that plaintiff was able to dress, bathe, and groom herself on an everyday basis. (T. 19, 436). She also helped her children get ready for school, and helped them with their homework. (T. 288). She was able to regularly go shopping, and could take public transportation. (T. 19, 68, 436). She was also able to cook, clean, and do laundry, but frequently received assistance with these tasks. (T. 19, 67-68, 371, 436).

The ALJ also considered the documented stability of plaintiff's HIV symptoms, despite her frequent refusal to take prescribed retroviral medication due to unpleasant side effects, and plaintiff's belief that she was "not ready" to follow her physician's recommendation that she consider other medication. (T. 19, 60-61, 509, 574). With regard to plaintiff's mental impairments, the ALJ noted that plaintiff's symptoms had improved with medication, and her physician had reduced her dosage.[5] (T. 19, 384).

Plaintiff contends that the ALJ failed to account for the unique nature of fibromyalgia when he evaluated plaintiff's credibility. (Pl.'s Br. at 16-18). However, the ALJ specifically recognized that plaintiff had been diagnosed with fibromyalgia

---

[5] Plaintiff also testified that she was no longer using prescription pain medication, due to concern about its addictive properties, and had not yet started using recently prescribed fibromyalgia medication. (T. 57, 62-63).

despite the lack of conclusive laboratory results, and did not dispute that diagnosis. (T. 18-19). His credibility determination, and the related RFC determination, was based upon a number of factors beyond clinical test results, including plaintiff's medication and her daily activities. Accordingly, the ALJ's credibility determination and the RFC determination were supported by substantial evidence.

## IX.   STEP FIVE DETERMINATION

### A.   Legal Standard

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the

hypothetical is proper. *Id*. at 276-77.

## B.     Analysis

The ALJ asked the VE several hypothetical questions. One of these questions mirrored the ALJ's ultimate determination of plaintiff's RFC. (T. 17, 38-40). The VE testified, based on his professional experience, that there were jobs available in the national economy that an individual with the same RFC as plaintiff would be able to perform. (T. 41-42). The VE also testified that such jobs existed in significant numbers, even though the overall numbers were eroded due to the RFC's restrictions on overhead and other reaching. (*Id*.) The ALJ relied on this testimony at step five. (T. 21-22). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated:       September 27, 2018

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**